JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

INLAND EMPIRE WATERKEEPER, a program of Orange County Coastkeeper, and ORANGE COUNTY COASTKEEPER, a California nonprofit public benefit corporation,

                  Plaintiffs,

v.

LUXFER INC., a Delaware stock corporation,

    Defendant.

Case No.: 8:25-cv-01368-DOC-JDE

**CONSENT DECREE**

CONSENT DECREE

## CONSENT DECREE

**WHEREAS,** Orange County Coastkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Costa Mesa, California;

**WHEREAS,** Inland Empire Waterkeeper is a program of Orange County Coastkeeper (collectively, including all other programs of Orange County Coastkeeper and Inland Empire Waterkeeper, "Waterkeeper");

**WHEREAS,** Waterkeeper's mission is to promote watershed resilience in the Upper Santa Ana River Watershed, which it does through advocacy, education, research, restoration, and enforcement.

**WHEREAS,** Luxfer Inc. ("Defendant") operates a facility at 1995 3rd Street, Riverside, CA 92507 (the "Facility");

**WHEREAS,** the Facility is owned and operated by Luxfer Inc. with its corporate office located at 3016 Kansas Ave, Riverside, CA 92507;

**WHEREAS,** Luxfer Inc. owns the land upon which the Facility operates;

**WHEREAS,** Luxfer Inc. is in the business of manufacturing aluminum liners and high-pressure composite and steel cylinders;

**WHEREAS,** Luxfer Inc. is categorized under Standard Industrial Classification ("SIC") Code 3354, Aluminum Extruded Products;

**WHEREAS,** storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** the operations at the Facility may result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act

CONSENT DECREE

Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, on April 24, 2025, Waterkeeper sent a notice of intent to file suit ("60-Day Notice") to Luxfer Inc., their registered agents for service of process, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director of the Regional Water Quality Control Board, Santa Ana Region ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ at the Facility;

**WHEREAS**, on June 24, 2025, Waterkeeper filed a complaint against Luxfer Inc. in the Central District of California, Civil Case No. 8:25-cv-01368 (the "Complaint");

**WHEREAS**, Plaintiffs' Complaint alleged violations of the General Permit and the Clean Water Act for Luxfer Inc.'s alleged discharges of pollutants into storm drains and surface waters, which discharges to the Santa Ana River, a water of the United States, which discharges into the Pacific Ocean (collectively, the "Receiving Waters");

**WHEREAS**, Waterkeeper and Defendant (Waterkeeper and Defendant together, the "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint as full and final resolution and without further proceedings; and

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

CONSENT DECREE

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.      Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.      The Complaint states a claim upon which relief may be granted against Luxfer Inc. pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.      Waterkeeper has standing to bring this action.

5.      The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term of this Consent Decree.

**I.      OBJECTIVES**

6.      It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by Waterkeeper in its 60-Day Notice and Complaint or otherwise related to issues of stormwater compliance at the Facility occurring prior to the delivery of the Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.      In light of these objectives and as set forth fully below, Luxfer Inc. agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

---

CONSENT DECREE

## II.    AGENCY REVIEW AND CONSENT DECREE TERM

### A.    AGENCY REVIEW OF CONSENT DECREE

8.    <u>Agency Review</u>. Waterkeeper shall submit this Consent Decree to the United States Department of Justice and the EPA (together, the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier (the "Agency Review Period").

9.    <u>Court Notice</u>. Waterkeeper shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10.    <u>Entry of Consent Decree</u>. Promptly following the expiration of the Agency Review Period, Waterkeeper shall submit the Consent Decree to the Court for entry.

### B.    DEFINITIONS

11.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated by the EPA under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, the following definitions apply:

    a.    "BAT" means the Best Available Technology Economically Achievable.

    b.    "BCT" means the Best Conventional Treatment Technology.

    c.    "BMPs" means Best Management Practices.

    d.    "Advanced Treatment" means additional structural BMPs designed in accordance with General Permit Section X.H.6, up to and including treatment utilizing polymer- or electrostatically-assisted filtration or technology equivalent in performance.

4

e.  "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

f.  "Day" or "day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

g.  "Discharge Point" means each outfall and discharge location designated in the SWPPP for Luxfer Inc.

h.  "Wet Weather Season" means October 1 – March 31 of any given year.

i.  "Forecasted Rain Event" means a storm event with a greater than 25% change of precipitation over 0.1 inch.

j.  "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

k.  "Entry Date" means the day this Consent Decree is approved and entered by the Court.

l.  "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B of the General Permit.

m.  "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

n.  "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

o.  "SWPPP" means a Storm Water Pollution Prevention Plan.

p.  "Term" means the period between the Effective Date and the "Termination Date."

q.  "Termination Date" means:

CONSENT DECREE

    i.  Three (3) years from the Effective Date, unless there is an ongoing, unresolved formal dispute regarding Luxfer Inc.'s compliance with this Consent Decree;

    ii.  If there is an ongoing, unresolved formal dispute regarding Luxfer's compliance with material terms of this Consent Decree, the Consent Decree will terminate within seven (7) days following the earlier of: (1) notice by the Settling Party that invoked Dispute Resolution procedure that the dispute has been fully resolved, or (2) an order of the Court resolving the dispute;

    iii.  Notwithstanding the above, if the Regional Board approves a Notice of Termination submitted for Luxfer Inc. pursuant to Section 2.C of the General Permit, the Termination Date shall be the later of: (1) the date of the Regional Board's Approval of the Notice of Termination for Luxfer Inc., or (2) seven (7) calendar days from Luxfer Inc.'s completion of all payments required by this Settlement Agreement.

## III. COMMITMENTS OF THE SETTLING PARTIES

### A. STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

  12. <u>Current and Additional Best Management Practices</u>: In addition to maintaining the current BMPs described in Luxfer Inc.'s SWPPP, Luxfer Inc. shall (1) develop and implement the BMPs identified herein, and (2) develop and implement additional BMPs necessary, if any, to comply with the provisions of the General Permit, including but not limited to those that achieve BAT/BCT.

  13. <u>Non-Structural BMPs for Luxfer Inc.</u>: Within thirty (45) days of the Effective Date, Luxfer Inc. shall develop and implement the following BMPs at the Facility and incorporate them into Luxfer Inc.'s SWPPP:

CONSENT DECREE

a.    Prior to the start of each wet weather season, inspect the outdoor paved surface to identify damaged locations that impede sweeping effectiveness and repair all such areas;

b.    Acquire a vacuum sweeper equipped with a HEPA filter, as specified by the U.S. Department of Energy, and use it to sweep all accessible portions of the entire yard weekly during Wet Weather Season and monthly during the dry season and before any Forecasted Rain Event;

c.    Manually sweep all areas inaccessible by the mechanical sweeper on the same schedule identified in Paragraph 13.b above and mechanically sweep the area immediately when movement of materials or equipment renders them accessible;

14.    <u>Structural and Advanced BMPs</u>: Luxfer Inc. shall install two additional trench drains at the 3rd Street gate and the Kansas Street gate. The trench drains will run approximately 30 feet, and will be comprised of 8 inch fiber reinforced pre-slope channels with two end caps each. Curbing will be added to the trench drains to assist with capturing sheet flow. Trench drain pillows will be added to each trench drain to extend the drain for additional treatment. Weir dams designed to treat zinc and other metals will be installed within the additional trench drains along the south driveway and the west side boundary materials storage area. Catchbasin inserts will be installed in catchbasins 1, 2, 3, 5, 6, and 7. All weir dams, catchbasin inserts, and trench drain pillows will use technology designed specifically to treat and reduce the levels of metals present in stormwater. A third-party servicer will directly perform semi-annual filter replacements and maintenance on the filtration system. A third-party servicer will also perform the initial measuring and installion of all catchbasin inserts, weir dams, and drain pillows noted above.

CONSENT DECREE

15.    <u>Reporting</u>: Within fourteen (14) days of completion of the BMPs identified in Paragraph 13 and 14, Luxfer Inc. will provide Waterkeeper with written confirmation of completion, including sufficient photographs of structural BMPs.

**B.    SAMPLING AT THE FACILITY**

16.    <u>Frequency</u>: During the Term, Luxfer Inc. shall collect samples of storm water discharge from each Discharge Point(s) during no fewer than four (4) Qualifying Storm Events ("QSEs") per Reporting Year, provided four (4) QSEs occur. Luxfer Inc. shall sample at least two (2) QSEs during each half of the Reporting Year, depending on when such QSE's occur. If Luxfer Inc. is unable to collect samples from two (2) QSEs during the first half of the reporting year, it shall make every effort to collect all four (4) samples in the second half of the reporting year.

17.    <u>Documentation</u>. During the Term, Luxfer Inc. shall maintain a recording rain gauge capable of recording rainfall to 0.1 inches. Luxfer Inc. shall maintain the recording rain gauge in accordance with the manufacturers' recommendations, maintain records of all maintenance and rain data, and provide such rain gauge data to Coastkeeper upon a request for documentation made pursuant to Paragraph 26.

18.    <u>Sampling Parameters</u>: All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1.

19.    <u>Laboratory and Holding Time</u>: Except for pH samples, Luxfer Inc. shall cause delivery of all samples to a California state certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions. During the Term, Luxfer Inc. shall exclusively use a calibrated portable instrument for measuring pH in accordance with the manufacturer's instructions and shall not use wide range litmus pH paper or other equivalent.

CONSENT DECREE

20.    Detection Limit: Luxfer Inc. shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

21.    Reporting: During the Term, Luxfer Inc. shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit and shall provide copies to Waterkeeper within thirty (30) days of receiving the laboratory report with the results

C.    **REDUCTION OF POLLUTANTS IN DISCHARGES**

22.    Table 1 Numeric Limits: Luxfer Inc. shall develop and implement BMPs to reduce pollutants in storm water at the Facility to levels below those in Table 1.

**TABLE 1**

| Analytes | Values | Source of Limit |
|---|---|---|
| pH | 6.5 - 8.5 | Basin Plan |
| Oil and Grease (O&G) | 15 mg/L | Permit NAL |
| Total Suspended Solids (TSS) | 100 mg/L | Permit NAL |
| Nitrate + Nitrite (N+N) | 0.68 mg/L | Permit NAL |
| Zinc (Zn) | 0.26 mg/L | Permit NAL |
| Aluminum (Al) | 0.75 mg/L | Permit NAL |
| Copper (Cu) | 0.0332 mg/L | Permit NAL |

23.    Action Plan Trigger: The action plan requirements set forth in Paragraph 24 shall be triggered upon the occurrences of any of the following events: (1) two exceedances of the Table 1 value for the same pollutant from the same outfall during a Reporting Year; or (2) three exceedances of any combination of pollutants from the same outfall during a Reporting Year; or (3) a Level 1 or Level 2 ERA has been triggered when sampling results indicate an annual NAL exceedance for a pollutant. *See* Permit Section XII.C and D.

24.    Action Plan: As of the Effective Date, and for the remainder of the Term, if Luxfer Inc. triggers an Action Plan as described in this Paragraph 24, Luxfer

Inc. shall prepare and submit to Waterkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility ("Action Plan"). In any year that a Level 1 or Level 2 ERA has been triggered, the Level 1 or Level 2 ERA Report may serve as the Action Plan. In any year that an Action Plan is required, such Action Plan shall be submitted by July 1 or within 30 days following the sample results that triggered the Action Plan, whichever is later. No more than one Action Plan will be required in any given year.

a.    Action Plan Requirements. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s); (2) an assessment of the source of each contaminant exceedance and/or applicable; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the Table 1 Value(s); and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure all BMPs are implemented as soon as possible, but in no event later than October 1 or within 30 days following the submittal of the Action Plan, whichever is later, unless a later implementation date is mutually agreed upon by the Settling Parties.  If, during the second year of the Term, Luxfer Inc. triggers an Action Plan, that Action Plan must include Advanced Treatment, as defined above, that complies with the design requirements specified in Section X.H.6 of the General Permit.

b.    Action Plan Review: Waterkeeper shall have thirty (30) days upon receipt of Luxfer Inc.'s complete Action Plan to provide Luxfer Inc. with comments. Within fourteen (14) days of receiving Waterkeeper's proposed revisions to an Action Plan, Luxfer Inc. shall consider each of Waterkeeper's recommended revisions and

CONSENT DECREE

accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan and shall not be considered a breach of this Consent Decree by Luxfer Inc.

c. Luxfer Inc. shall revise the Facility's SWPPP within thirty (30) days of completion of the Action Plan to reflect the changes required by the Action Plan. Luxfer Inc. shall notify Waterkeeper in writing when the Action Plan has been implemented and shall submit the revised SWPPP to Waterkeeper for review and comment.

d. Action Plan Payments: As Waterkeeper's sole remedy, Luxfer Inc. shall pay Six Thousand Dollars ($6,000.00) each time an Action Plan other than an Action Plan related to the existing Level 2 ERA Reporting requirement is submitted to Waterkeeper at the same time that the Action Plan is submitted. Payments shall be made to "Orange County Coastkeeper" via certified mail, return receipt requested to Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

CONSENT DECREE

### D. VISUAL OBSERVATIONS

25.    <u>Visual Observations</u>: During the Term of this Consent Decree, Luxfer Inc. shall conduct visual observations pursuant to the General Permit.

### E. MAINTAINING RECORDS AND RECORD REQUESTS

26.    Luxfer Inc. shall maintain records, which may include photographs, to document compliance with all terms of this Consent Decree, including, but not limited to Paragraphs 14, 15, 25, 26, and 27. Waterkeeper can request a copy of these records in writing, and Luxfer Inc. shall provide Waterkeeper with a copy of such requested records within fourteen (14) days of receipt of a written request from Waterkeeper for those records, but expressly subject to Waterkeeper maintaining confidentiality of such records.

### F. EMPLOYEE TRAINING

27.    Within thirty (30) days of the Effective Date, Luxfer Inc. shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number and capability of employees working at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) such Designated Employees are properly trained to perform the required activities to maintain compliance with the General Permit and the Facility's SWPPP, and this Consent Decree; and (3) all full-time regular (non-temporary) non-clerical Luxfer Inc. employees at the Facility who work outdoors or may reasonably perform work outdoors at the Facility (hereinafter referenced as "ALL Employees") receive basic information regarding housekeeping and storm water best management practices (the "Training Program").

28.    Designated Employee Training shall at a minimum, include:

a.    <u>Non-Storm Water Discharges</u>. Designated Employees shall be trained on the General Permit's prohibition of non-storm water discharges so that Designated Employees know what non-storm water discharges are, that non-storm water discharges can result

CONSENT DECREE

from improper surface washing or the release of any substance from the property, and how to detect and prevent non-storm water discharges.

b. <u>The SWPPP and BMPs</u>. All Designated Employees shall be trained on the SWPPP and, specifically, BMP implementation and/or maintenance, as applicable, to ensure BMPs are implemented effectively to prevent the exposure of pollutants to storm water and prevent the discharge of contaminated storm water from the Facility. Designated Employees shall be trained on proper operational procedures and control measures. All training of Designated Employees must include the requirements of the General Permit and this Consent Decree including the additional BMPs outlined in Paragraphs 13 and 14 above.

c. <u>Visual Observation</u>. Luxfer Inc. shall designate and train an adequate number of Designated Employees necessary to conduct visual monitoring of all outfalls, as required by the General Permit.

d. <u>Storm Water Sampling</u>. Luxfer Inc. shall designate an adequate number of Designated Employees necessary to collect storm water samples as required by this Consent Decree the General Permit. The Training Program shall include training of Designated Employees sufficient to ensure: (i) proper sampling protocols, including chain of custody requirements, are followed at all times and, (ii) storm water samples are properly collected, stored, and submitted to a certified laboratory. Contractors may be used to collect storm water samples when Designated Employees are not present due to unforeseen circumstances, such as illness or emergency.

13

CONSENT DECREE

e. <u>Training Implementation</u>. Training of at least one Designated Employee (hereinafter referenced as "Designated Trainer") shall be provided by a Qualified Industrial Storm Water Practitioner (a "QISP," as defined in Section IX.A of the Permit) familiar with the requirements of this Consent Decree and the General Permit. The Designated Trainer and/or the QISP shall provide the training set forth in this Paragraph 29.

f. <u>Language</u>. The Training Program shall be conducted, and all training materials shall be made available, in the language in which the employee(s) participating in the Training Program are fluent.

g. <u>Training Program Frequency – Designated Employees</u>. Training shall be provided by an individual qualified to perform such training under the requirements of the General Permit and who is familiar with the terms of the General Permit, this Consent Decree, and the SWPPP. The training will be repeated as necessary to ensure that all employees assigned storm water responsibilities are familiar with the requirements of the General Permit and the SWPPP. All new Designated Employees shall receive this training before assuming responsibilities for implementing Luxfer's SWPPP or monitoring and sampling as required by the General Permit.

29. <u>All Employee Training Program</u>. ALL employees shall receive basic training and information regarding housekeeping and storm water best management practices, which may be performed by a Designated Trainer or a QISP.

a. <u>Training Program Frequency – ALL Employees</u>. ALL Employees who have not received training shall receive initial training to ensure they receive enough information regarding storm water

14

housekeeping and best practices to comply with this Consent

Decree and the General Permit. ALL Employees who are new

shall receive this training within one year of hiring.

30.    Training Records. Luxfer Inc. shall maintain training records to document compliance with this section, including sign-in sheets documenting which employees were trained, and shall provide Waterkeeper with a copy of such records if requested in accordance with Paragraph 26.

**G.    STORM WATER POLLUTION PREVENTION PLAN**

31.    SWPPP. Within thirty (30) days of the Effective Date, Luxfer Inc. shall amend the Facility's SWPPP to incorporate the requirements of the General Permit and this Consent Decree.

32.    Revising the SWPPP. Luxfer Inc. shall revise the Facility's SWPPP if there are any significant changes in Luxfer Inc.'s operations, including but not limited to changes to storm water discharge point(s) or significant changes/additions to the BMPs at Luxfer Inc., within thirty (30) days of the occurrence of any of the above-listed events.

33.    Commenting on Revised SWPPPs. Luxfer Inc. shall submit each revised SWPPP to Waterkeeper for review and comment within thirty (30) days of its completion. Waterkeeper shall provide comments, if any, to Luxfer Inc. within thirty (30) days of receipt of the SWPPP. Within thirty (30) days of receiving Waterkeeper's comments on the SWPPP, Luxfer Inc. shall accept and incorporate Waterkeeper's comments into the SWPPP or, alternatively, justify in writing why any comment is not being incorporated. Any disputes as to the adequacy of a SWPPP and/or Luxfer Inc.'s failure to incorporate Waterkeeper's comments shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

CONSENT DECREE

### H.    COMPLIANCE MONITORING AND REPORTING

34.    Waterkeeper may conduct up to two (2) site inspections ("Site Inspection") per Reporting Year for the purpose of ensuring compliance with this Consent Decree and the General Permit, but expressly subject to the terms of the Access Agreement by and between the parties dated July 30, 2025. Any Site Inspection shall occur during normal business hours, and Waterkeeper will provide Luxfer Inc. with at least forty-eight (48) hours' notice prior to a wet weather Site Inspection, and at least seventy-two (72) hours notice before any dry weather inspection. For any Site Inspection requested to occur in wet weather, Waterkeeper shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 61. During the wet weather inspection, Waterkeeper may request that Luxfer Inc. collect a sample of industrial storm water discharge from Luxfer Inc.'s designated industrial Discharge Point(s), to the extent that such discharges are occurring. Luxfer Inc. shall collect the sample and provide a split sample to Waterkeeper. Waterkeeper's representative(s) may observe the split sample(s) being collected by the Luxfer Inc.'s representative. Waterkeeper shall be permitted to take photographs in accordance with the terms of the Access Agreement.

35.    <u>Document Provision</u>. During the Term, Luxfer Inc. shall notify and submit documents to Waterkeeper as follows:

> a.    Luxfer Inc. shall provide Waterkeeper electronic emailed copies of all compliance documents, monitoring and/or sampling data, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality within seven (7) business days of submission;

CONSENT DECREE

b.  Within ten (10) business days of receipt by Luxfer Inc., Luxfer Inc. shall send to Waterkeeper any compliance document, inspection report, or any document related to storm water quality at the Facility received by Luxfer Inc. from the Regional Board, the State Board, and/or any state or local agency, county, municipality. Luxfer Inc. shall email electronic copies of documents to Waterkeeper at the relevant notice address contained below.

36.  <u>Compliance Monitoring</u>. Luxfer Inc. agrees to partially defray costs associated with Waterkeeper's monitoring of Luxfer Inc.'s compliance with this Consent Decree until the Termination Date by issuance of a one time payment in the amount of Forty-Five Thousand Dollars ($45,000.00). The payment shall be made via check, made payable to: "Orange County Coastkeeper" via certified mail, return receipt requested to Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**I.  ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, STIPULATED PENALTIES, AND INTEREST**

37.  <u>Environmental Mitigation Project</u>: To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in and around the Santa Ana River, Defendant agrees to make a payment totaling Forty Thousand Dollars ($40,000.00) to the Rivers and Lands Conservancy made within thirty (30) days of the Entry Date, payable to Rivers and Lands Conservancy and sent via overnight mail to 6876 Indiana Avenue, Suite J-2, Riverside, CA 92506.  Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

38.  <u>Coastkeeper's Fees and Costs</u>: Defendant agrees to pay a total of Ninety Thousand Dollars ($90,000.00) to Waterkeeper to partially reimburse Waterkeeper

CONSENT DECREE

for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to Orange County Coastkeeper and delivered by certified mail or overnight carrier to: Orange County Coastkeeper, 3151 Airway Ave., Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

39.    <u>Stipulated Payment</u>. In the event that Waterkeeper itself is not in breach of this Consent Decree and Luxfer Inc. fails to submit to Waterkeeper any payment, document, report, or communication required by this Consent Decree, Waterkeeper shall provide written notice to Luxfer Inc. of such missed deadline. Luxfer Inc. shall have ten (10) business days from receipt of such notice to respond to Waterkeeper, and if necessary or possible, cure such delinquency. If Luxfer Inc. fails to respond and, if necessary or possible, cure such alleged delinquency within ten (10) business days of receipt of Waterkeeper's notice, then as Waterkeeper's sole and exclusive remedy for any breach of this Consent Decree by Luxfer Inc. aside from specific performance of the breach and the remedies laid out in Section IV of this Consent Decree, Luxfer Inc. shall pay a stipulated payment of Five Hundred Dollars ($500) per day (the "Stipulated Payment"). The cumulative maximum Stipulated Payment amount for failure to cure an alleged deficiency shall not exceed Fifteen Thousand Dollars ($15,000). Such Stipulated Payment shall be made by check payable to: Rivers and Lands Conservancy, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 37. The Sitpulated Payment shall be sent via overnight mail to Rivers and Lands Conservancy, 6876 Indiana Avenue, Suite J-2, Riverside, CA 92506. Luxfer Inc. agrees to make the Stipulated Payment within thirty (30) days after failure to cure as

CONSENT DECREE

provided for in this paragraph in resolution of the event that precipitated the stipulated payment liability.

## IV.    DISPUTE RESOLUTION

40.    This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

41.    <u>Meet and Confer</u>. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the notice.

42.    <u>Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 41 above, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion. If the parties do not wish to request a conference with a magistrate, they may request a settlement conference.

43.    In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek reasonable attorney's fees and legal costs incurred in connection with pursuit of enforcement of this Consent Decree, pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

CONSENT DECREE

# V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

44.    <u>Waterkeeper's Waiver and Release of the Releasees.</u> In consideration of the above, upon the Effective Date of this Consent Decree, Waterkeeper, on its own behalf and on behalf of its employees, officers and directors ("Releasors"), release Defendant, and Defendant's affiliates, subsidiaries and related entities, and Defendant's and Defendant's affiliates', subsidiaries' and related entities' officers, directors, managers, employees, members, parents, shareholders, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, (collectively "Releasees") from and waives all claims of any sort that Releasors may have against Releasees prior to issuance of this Consent Decree, including but not limited to claims that were raised in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

45.    <u>Luxfer Inc.'s Waiver and Release of Waterkeeper.</u> In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Waterkeeper, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

46.    Notwithstanding anything to the contrary, all of Defendant' liabilities and obligations herein and/or in existence prior to the Entry Date of this Consent Decreeshall terminate as of the Termination Date**.**

# VI.    MISCELLANEOUS PROVISIONS

47.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. No aspect of the discussion between the parties, this Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability. By entering into this Consent Decree Defendant make no admission to any violation of any law, rule, or regulation,

CONSENT DECREE

including but not limited to any and all federal, state, or local laws, rules, and regulations. Defendant maintains and reserves all rights, remedies and defenses it may have to any alleged violations that may be raised in the future.

48. <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

49. <u>Authority</u>. The undersigned representatives for Waterkeeper and Luxfer Inc. each certify that they are fully authorized by the parties whom they represent to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

50. <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

51. <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

52. <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

53. <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, it shall be severed here from and the validity of the enforceable provisions shall not be adversely affected.

CONSENT DECREE

54.     <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

55.     <u>Diligence</u>: As required pursuant to this Consent Decree, Luxfer Inc. shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

56.     <u>Effect of Consent Decree</u>: Compliance with this Consent Decree does not mean that Luxfer Inc. is or is not complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

57.     <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

58.     <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by all of the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

59.     <u>Assignment</u>. Subject only to the express conditions contained in this Consent Decree, all the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. In the event Luxfer Inc.'s transferee or assign ("Assignee") will continue industrial operations at the Facility during the Term, Luxfer Inc. shall notify Coastkeeper ten (10) days in advance of the proposed transfer or assignment ("the Assignment Notice") and within ten (10) days following the Assignment Notice, Luxfer Inc. will provide Waterkeeper with a written assignment and

CONSENT DECREE

assumption duly executed by the Facility and the Assignee assigning Luxfer Inc.'s obligations under this Consent Decree to the Assignee.

60.   Force Majeure. A Party shall not be considered to be in default in the performance of any of its respective obligations under this Consent Decree to the extent its performance becomes is limited due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

61.   Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

CONSENT DECREE

If to Waterkeeper:
Davina Shoumer
Email: davina@coastkeeper.org
ORANGE COUNTY
COASTKEEPER
3151 Airway Avenue, Suite F-110
Costa Mesa, CA 92626
Phone: (714) 850-1965

If to Luxfer Inc.:
Howard Mead, VP and General
Manager
Howard.mead@luxfer.com
Luxfer Inc.
3016 Kansas Ave
Riverside, CA 92507

Greg Cope, VP of Finance
greg.cope@luxfer.com
Luxfer Inc.
3016 Kansas Ave
Riverside, CA 92507

Janelle Ramos, General Counsel
Janelle.ramos@luxfer.com
Luxfer Inc.
3016 Kansas Ave
Riverside, CA 92507

With copies to:
Sarah Spinuzzi
Email: sarah@coastkeeper.org
ORANGE COUNTY
COASTKEEPER
3151 Airway Avenue, Suite F-110
Costa Mesa, CA 92626
Phone: (714) 850-1965

With copies to:
Adam Kosmicki
Email:
Adam.Kosmicki@huschblackwell.com
HUSCH BLACKWELL
8001 Forsyth Boulevard, Suite 1500
St. Louis, MO 63105
Phone: (314) 345-6204

Chris Erker
Email: chris.erker@huschblackwell.com
HUSCH BLACKWELL
8001 Forsyth Bouelevard, Suite 1500
St. Louis, MO 63105
Phone: (314) 480-1613

24

CONSENT DECREE

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

62.    If for any reason the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.


APPROVED AS TO CONTENT


Dated: ___10/31/2025___                    By: _____
                                                Garry Brown
                                                Executive Director
                                                Orange County Coastkeeper



Dated: ___10/31/25___                      By: _____
                                                Howard Mead, VP and General
                                                Manager

25

CONSENT DECREE

Luxfer Inc.

APPROVED AS TO FORM

Dated: 11/3/2025

By: *Davina Shoumer*

Davina Shoumer
Attorney for Orange County
Coastkeeper

Dated: 10/31/2025

By: *Adam Kosmicki*

Adam Kosmicki
Attorney for Luxfer Inc.

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between Waterkeeper and Luxfer Inc.

Dated: December 31, 2025

*David O. Carter*

Honorable David O. Carter
United States District Judge
Central District of California

CONSENT DECREE

28

27

CONSENT DECREE